Emily R. Rankin, #6-3451
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, Wyoming 83001
Telephone: (307) 733-7290
Fax: (307) 733-5248
rankin@spencelawyers.com

ATTORNEY FOR PLAINTIFF

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

OCT 25 2011

Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| YOLANDA EVERT, individually and as the Qualified Wrongful Death Representative of Erwin Evert, deceased,<br><br>   Plaintiff,<br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>   Defendant. | Civil No. 11-CV-339F |

## COMPLAINT

Plaintiff, by and through her counsel, Emily R. Rankin of The Spence Law Firm, LLC, for her causes of action against defendant, states and alleges as follows:

### I.

### PARTIES

1. Plaintiff Yolanda Evert, at all times relevant herein, was the spouse of Erwin Evert, deceased.

2. At all times relevant to the facts alleged in this Complaint, Yolanda and Erwin Evert were citizens of Illinois and seasonal residents of Wyoming.

3. Plaintiff Yolanda Evert brings this lawsuit as the qualified Wrongful Death Representative of Erwin Evert, deceased, pursuant to the Wyoming Wrongful Death Act, Wyo.

Stat. §§ 1-38-101 and 102. She brings this action on behalf of all participating beneficiaries of Erwin Evert, deceased.

4. In this Complaint and simultaneously in a pending Petition for Appointment of Wrongful Death Representative filed with the Court on this date, and in compliance with *Johnson v. Johnson*, 231 P.3d 873 (Wyo. 2010), Plaintiff asks the Court to appoint her as the Wrongful Death Representative within this wrongful death action.

5. The United States of America is a sovereign government that has consented to be sued for civil liability in accordance with 28 U.S.C. § 2671 et seq.

6. The Interagency Grizzly Bear Study Team (hereinafter referred to as "IGBST") was an agency of the defendant, the United States of America, under the direct jurisdiction of the United States Geological Survey and the United States Department of Interior.

7. The IGBST is administered by the United States Geological Survey and was initiated in 1973 by the Department of Interior. The team is comprised of an interdisciplinary group of personnel responsible for long-term monitoring and research efforts on grizzly bears in the Greater Yellowstone Ecosystem.

8. This Complaint is brought against defendant for its employees' negligent and wrongful acts and omissions while acting within the scope of their employment with the United States Government.

9. Chad Dickinson, at all times relevant herein, was an employee of the IGBST pursuant to 28 U.S.C. § 2671, working as a grizzly bear captor on June 17, 2010. At all times material herein, Chad Dickinson was acting within the scope of his employment with the United States Government.

10. Seth Thompson, at all times relevant herein, was an employee of the IGBST pursuant to 28 U.S.C. § 2671, working as a grizzly bear captor on June 17, 2010. At all times material herein, Seth Thompson was acting within the scope of his employment with the United States Government.

11. Charles Schwartz, at all times relevant herein, was an employee of the IGBST pursuant to 28 U.S.C. § 2671, and was the Team Leader of the IGBST. At all times material herein, Charles Schwartz was acting within the scope of his employment with the United States Government.

## II.

## JURISDICTION AND VENUE

12. Plaintiff filed a Notice of Claim in proper form based on the following facts within the applicable limitations period as required by 28 U.S.C. § 2675(a).

13. The Notice of Claim was filed on May 18, 2011, with the appropriate federal agency – the United States Geological Survey/Interagency Grizzly Bear Study Team.

14. The United States Department of the Interior Office of the Solicitor finally denied plaintiff's claim on July 15, 2011, in writing, by certified mail.

15. Less than six months have elapsed between the mailing date of the denial letter and the filing of this suit in compliance with 28 U.S.C. § 2401(b).

16. All procedural prerequisites to filing this action have been properly satisfied including compliance with 28 U.S.C. § 2675(a).

17. The United States District Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1346(b) because plaintiff is bringing a claim against the United

States for money damages for wrongful death caused by the negligent or wrongful acts and omissions of employees of the government while acting within the scope of employment under circumstances where the United States, if a private person, would be liable in accordance with law.

18. Pursuant to 28 U.S.C. § 2680(a), this claim is not based upon the exercise or performance, or the failure to exercise or perform a discretionary function or duty on the part of defendant or its employees.

19. The amount in controversy exceeds, exclusive of interests and costs, the sum of Seventy Five Thousand Dollars ($75,000.00). Consistent with the amount presented to the federal agency, the amount of the claim is $5,000,000.00 (Five Million Dollars).

20. Venue is proper in the District of Wyoming pursuant to 28 U.S.C. § 1402(b) because the acts and/or omissions complained of occurred within this District.

III.

FACTUAL BASIS FOR CLAIM

21. Erwin Evert's fatal injury occurred on the Shoshone National Forest, which is United States of America forest land managed by the United States Forest Service, an agency of the United States Department of Agriculture.

22. On July 21, 1997, the Shoshone National Forest instituted a closure order for grizzly bear trapping and collaring areas to minimize human/bear encounters. The Order mandated that closure areas be marked on the ground with closure signs.

23. In January of 2010, the IGBST received a Chapter 33 permit (#439) from the Wyoming Game and Fish Department. The permit allowed the IGBST "[t]o conduct

capture operations in order to monitor grizzly bear population, survival, and occupancy in the greater Yellowstone ecosystem for grizzly bear recovery efforts."

24. The Chapter 33 permit specifically mandated that, "All trap sites shall occur on public lands and will be signed to alert the public if they inadvertently approach a baited trap site."

25. On March 30, 2010, the IGBST was issued a "Subpermit for handling research grizzly bears" from the U.S. Fish and Wildlife Service, United States Department of the Interior.

26. The U.S. Fish and Wildlife Service Permit directed that, "Every possible precaution shall be taken to avoid confrontations between bears and the public, including but not limited to closure or signing of the study sites."

27. IGBST's own guidelines for handling of grizzly bears dictate that "[t]he first and most important thing to accomplish before setting out is to touch base with the landowners and local state and federal officials."

28. The IGBST guidelines clearly state that, "Government and state employees have the obligation to protect people. The majority of the public assumes that they will be warned if dangerous animals are in the area . . . It all comes down to an issue of 'adequate warning.' When a researcher or manager can prevent an injury by informing the public, they have the duty to do so . . . Bear researchers and managers must make careful decisions and always warn the public when a trap has been placed in the vicinity or when there is a potential for a confrontation. Education and communication are the best tools when working with the media and the public."

29. Kitty Creek is a drainage of the North Fork of the Shoshone River south of U.S. Highway 20, seven miles from the Yellowstone East Entrance.

30. Grizzly bear capture operations conducted by the IGBST began in the Kitty Creek drainage on May 27, 2010, and continued until June 17, 2010.

31. The IGBST field crew consisted of Chad Dickinson and Seth Thompson.

32. The crew created three trap sites in Kitty Creek by placement of road kill baits and scent lure in the vicinity of snare and pail sets.

33. Erwin and Yolanda Evert lived in one of fourteen, private, United States Forest Service permitted cabins at the bottom of the Kitty Creek drainage, and had lived there seasonally for nearly forty years.

34. Per discussions with the Shoshone National Forest, Chad Dickinson assumed the responsibility to speak with the Kitty Creek residence occupants and inform them of their trapping activities.

35. The field crew talked to the residents of just one of the fourteen cabins throughout the approximately three-week trapping period despite the field crew's twice daily travel past the cabins.

36. The IGBST field crew claims they saw Erwin at least twice at his cabin, yet the IGBST field crew never informed or warned Erwin of their trapping activity.

37. Neither the homeowners nor the public were provided with advance written notification of the crew's trapping efforts.

38. The incident site (Site #3) was created on June 12, 2010.

39. It was located 3700 feet (less than ¾ of a mile) from the closest of the fourteen cabins.

40. Site #3 is on a Forest Service road that was decommissioned in the 1990's.

41. There was a well-defined access route to Site #3.

42. Sometime between June 16-17, 2010, the bear at issue, an adult male grizzly bear (#646, never previously captured), was captured at Site #3 by a pail set with deer bait. The capture created swelling in the bear's right foot, and the bear had a large open wound on its left shoulder, and numerous fight wounds on its head and neck.

43. Within the same timeframe, an adult female grizzly bear (#628) was captured at Site #2.

44. Between 0906 and 0954 on June 17, 2010, the crew immobilized Bear #646 with three doses of Telazol (7.2 ml).

45. The crew pulled the bear's tooth, tattoo stamped its upper lips, tagged its ears, administered antibiotics, took samples and fitted the bear with a radio collar.

46. At 1230 hours the bear began showing limited signs of recovery by holding up and swaying his head.

47. Despite IGBST protocol and procedures requiring the crew to remain at the site until the bear is ambulatory, the crew left the bear to check the other snare at Site #2.

48. In the IGBST Bear Tagging Form, the crew noted "?" in the box inquiring when the bear's recovery from sedation was complete.

49. On June 17, 2010, as the crew left Site #3, and despite the long-established procedures, policies, orders and permit requirements, the crew removed all warning signs at Site #3 which stated, "DANGER! BEAR TRAP IN THE AREA. THE AREA BEHIND THIS SIGN IS TEMPORARILY CLOSED. THE CLOSURE IS EFFECTIVE FROM 6-11-10 TO 6-20-10."

50. The signs that the crew removed stated that the area was to be closed until June 20, 2010. The crew removed the signs three days early.

51. Shortly after the crew took down the warning signs, Erwin Evert walked on the trail, a decommissioned road, without knowledge or warning that he was walking in the same location of a trap site or a recently trapped and recovering bear.

52. There were no warning signs of any type when Erwin approached the site where he was killed.

53. Until moments before his death, Erwin Evert was never in the vicinity of Site #3 while trapping occurred from June 12-17, 2010.

54. As the crew prepared to leave the Kitty Creek drainage area, they encountered Yolanda Evert and she expressed concern as to her husband's whereabouts. Chad Dickinson rode directly back to site #3 to look for Mr. Evert. Mr. Dickinson found Mr. Evert's mauled body approximately twenty-one yards from where bear #646 was left to recover unmonitored from the effects of chemical immobilization and other intrusions, and almost directly under a tree where the IGBST crew had hung bait.

55. Mr. Dickinson left Mr. Evert at the scene without dismounting from his horse.

56. Mr. Evert was fatally mauled by bear #646.

57. Two days later, bear #646 was killed by management agencies. DNA from bear #646's hair was matched to the DNA of bear hair recovered from Erwin's body.

58. On that same day, June 19, 2010, trapping crews were advised to "*continue to carefully follow protocols for warning signs in the area of all capture operations before, during, and after captures.*" (Emphasis added).

## IV.

### WRONGFUL DEATH CAUSE OF ACTION AGAINST THE UNITED STATES OF AMERICA

59. Plaintiff hereby incorporates by reference all statements and allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

60. At all relevant times, Defendant and its employees owed a duty to Erwin Evert, in light of all relevant circumstances, to exercise reasonable and due care.

61. Defendant and its employees breached their duty to Erwin Evert as a result of their willful and negligent acts and omissions.

62. Defendant's willful and negligent acts and omissions violated applicable, specific and mandatory permits, policies, protocols and orders.

63. Defendant knew the Kitty Creek drainage, with its extensive trail and decommissioned road system, was used by the public.

64. Defendant willfully and negligently failed to choose a site that would minimize conflicts with the public.

65. Defendant willfully and negligently created a dangerous hazard by baiting, trapping and releasing bear #646 less than ¾ of a mile from homes, and along a trail.

66. Defendant willfully and negligently failed to provide homeowners or the public in the area including, but not limited to, Erwin Evert, prior notice and warning of grizzly bear trapping efforts.

67. Defendant willfully and negligently failed to implement an adequate warning system to notify homeowners and the public of the dangerous condition to include written notifications, posted notifications, taped closure notification and/or verbal warnings.

68. Defendant willfully and negligently failed to notify homeowners or the public in the area including, but not limited to, Erwin Evert, to inform them of the immediate, known and specific danger of a four-hundred and twenty-five pound grizzly bear recovering from ensnarement, chemical immobilization, surgery and handling in a baited environment. This inaction failed to comply with the following specific and mandatory permits/orders: Chapter 33 permit (#439) from the Wyoming Game and Fish Department, the "Subpermit for handling research grizzly bears" from the U.S. Fish and Wildlife Service, United States Department of the Interior, the Shoshone National Forest's July 21, 1997, closure order, and Defendant's internal protocols and procedures.

69. Defendant willfully and negligently failed to act, guard or warn in response to a specifically known, recognized and identified imminently dangerous and hazardous condition.

70. Defendant created a imminently dangerous and hazardous condition, and willfully and negligently failed to post signs or otherwise warn the public of such danger.

71. Defendant willfully and negligently removed all warning signs at Site #3 to indicate a recently trapped and immobilized bear was in the vicinity.

72. Defendant willfully and negligently removed all warning signs at Site #3 despite the fact a dangerous bear was in the vicinity.

73. Defendant willfully and negligently failed to close the area surrounding Site #3 despite the fact a recently trapped and immobilized bear was in the vicinity.

74. Defendant, acting with knowledge that the effect of the drug administered could cause a prolonged recovery particularly with multiple doses, willfully and negligently failed to supervise and monitor the recovering grizzly bear until ambulatory as required by its own mandatory policies and protocols.

75. Defendant willfully and negligently failed to utilize a drug combination that could be partially or completely reversed by use of antagonist drugs.

76. Defendant willfully and negligently failed to administer analgesia to the grizzly bear.

77. None of Defendant's acts and omissions were grounded in, or susceptible to a policy analysis.

78. The dangers to the public generally, and to Erwin Evert specifically, arising from IGBST's operations on Shoshone National Forest land were not known or obvious.

79. Defendant's acts and omissions were unreasonable and in disregard of a known risk and/or so obvious that it must have been aware of the risks and so great as to be obvious that harm would follow.

80. Defendant failed to act reasonably in conducting its operations in a safe manner in light of all the circumstances, including the likelihood of injury to another, the seriousness of the injury and the burden of avoiding the risk.

81. As a direct and proximate result of inadvertently coming in contact with the four-hundred and twenty-five pound grizzly bear recovering from entrapment, chemical immobilization, tagging, tattoo stamping, tooth removal, and handling in a baited environment, Erwin Evert sustained fatal injuries.

82. As a direct and proximate cause and result of the defendant's negligent acts and omissions, Erwin Evert died and the wrongful death beneficiaries suffered damages as set forth more fully in that section of this Complaint entitled "Damages."

## X.

## DAMAGES

83. Plaintiff hereby incorporates by reference all statements and allegations contained in paragraphs 1 through 82 above as if fully set forth herein.

84. As a direct and proximate result of the acts and omissions of defendant, Erwin Evert was fatally injured and plaintiff, individually and on behalf of all wrongful death beneficiaries, incurred the following damages:

(1) Loss of care, comfort, protection, companionship, association, advice and society in an amount to be proven at trial;

(2) Loss of future support, maintenance and contribution in an amount to be proven at trial;

(3) Funeral and burial expenses in an amount to be proven at trial;

(4) Costs of this action and such other damages as are fair and just; and

(5) All other damages properly recoverable due to the wrongful death of Erwin Evert according to Wyoming law.

WHEREFORE, Plaintiff prays the judgment, order and decree of this Court be as follows:

a) That judgment be entered in favor of plaintiff and against defendant.

b) That plaintiff be awarded all damages that are fair and just, in an amount supported by the allegations in this complaint and the evidence adduced at trial.

c) That plaintiff be awarded the costs of suit incurred herein.

d) That plaintiff be awarded all other and further relief as the Court deems just and

equitable under the circumstances.

DATED THIS 24th day of October, 2011.

> Emily R. Rankin
> THE SPENCE LAW FIRM, LLC
> 15 South Jackson Street
> P.O. Box 548
> Jackson, WY 83001
> 307- 733-7290 (p)
> 307-733-5248 (f)
>
> ATTORNEY FOR PLAINTIFF