Emily R. Rankin, #6-3451
Mark L. Aronowitz, #6-4064
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, Wyoming 83001
Telephone: (307) 733-7290
Facsimile: (307) 733-5248
rankin@spencelawyers.com
aronowitz@spencelawyers.com

ATTORNEYS FOR PLAINTIFF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| YOLANDA EVERT, individually and as the Qualified Wrongful Death Representative of Erwin Evert, deceased, )<br><br>Plaintiff, )<br>v. )<br><br>THE UNITED STATES OF AMERICA, )<br><br>Defendant. ) | Civil No. 11-CV-339-F |

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, by and through counsel, Emily R. Rankin and Mark L. Aronowitz of the Spence Law Firm, LLC, hereby files her Brief in Opposition to Defendant's Motion to Dismiss. Plaintiff requests Defendant's Motion be dismissed in its entirety pursuant to the argument and authority set forth.

### I.  INTRODUCTION

The premise of Defendant's Motion to Dismiss is erroneous. Defendant argues immunity for landowners is the general rule and Plaintiff's allegations must fit within a statutory exception. Fundamental principles of Wyoming law dictate the opposite. Reasonable care under the circumstances is the rule; immunity the exception. All landowners have a duty to act reasonably under the circumstances and "maintain property in a reasonably safe condition in view of all the

circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk." *Clarke v. Beckwith*, 858 P.2d 293, 296 (Wyo. 1993). It is under the umbrella of this established principle that the courts and legislature have carved out exceptions.

Accordingly, proper analysis of Defendant's Motion begins with the premise that Defendant owed a duty to Mr. Evert to act reasonably under the circumstances and maintain its property in a reasonably safe condition. The analysis then turns to whether Defendant is entitled to statutory immunity established by Wyoming's Recreational Use Act (WRUA) as Defendant argues, or whether statutory immunity is inapplicable to the Interagency Grizzly Bear Study Team (IGBST) and to the particular site where Mr. Evert died. Only if the Court determines the WRUA applies must the Court consider whether Defendant's own affirmative negligence created the dangerous condition at issue. In the event this Court determines Defendant's affirmative negligence did not create the danger, it must next consider whether Defendant voluntarily assumed duties through permits, regulations and agreement. If after all the foregoing analyses the Court determines Defendant owed Mr. Evert no duty, then a question of fact remains as to whether Defendant acted willfully. Willful conduct eliminates any statutory immunity Defendant may have otherwise enjoyed.

The question of whether Defendant owed a duty is resolved in Plaintiff's favor in one of three ways. First, the WRUA does not apply to a grizzly bear capture and scientific research site closed to all other uses; to the IGBST and its employees; or to unnatural, hidden dangers the IGBST created on the land. Second, even assuming *arguendo* the WRUA is applicable here, the IGBST assumed a duty to Mr. Evert by agreement and pursuant to permits and regulations. And, finally, even if no duty was assumed by agreement and pursuant to permits and regulations, a genuine issue of material facts exists whether IGBST's conduct was willful, which by statute eliminates any immunity. For all these reasons, Defendant's Motion to Dismiss must be denied.

## II.   STANDARD OF REVIEW

A defendant seeking to obtain a dismissal must surmount a formidable legal burden. "The standard of review applied to a motion to dismiss for failure to state a claim is well-established."

*Gressley v. Deutsch*, 890 F. Supp. 1474, 1482 (D. Wyo. 1994). "In considering whether a complaint states a plausible claim for relief, this court 'must accept all the well-pleaded allegations in the complaint as true and must construe them in the light most favorable to the plaintiff.'" *Konigsberg v. Mulliken, Larson, & Swift LLC*, 2011 WL 4929109, *2 (D. Wyo. 2011)(*quoting Alvorado v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007)). "Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bintner v. Burlington Northern, Inc.*, 857 F. Supp. 1484, 1487 (D. Wyo. 1994)(*quoting Pitts v. Turner and Boisseau Chartered*, 850 F.2d 650, 652 (10th Cir. 1988)). "In considering a motion to dismiss, a court must take the allegations of the complaint at face value and must construe them most favorably to the plaintiff." *Bintner,* 857 F. Supp. at 1487. "The allegations in the plaintiff's complaint are presumed true." *Id.* Furthermore, the Court must "draw all reasonable inferences in Plaintiff's favor." *Gressley*, 890 F. Supp. at 1482 (D. Wyo. 1994). The court's function on a Rule 12(b)(6) motion "is not to weigh potential evidence that might be presented or determine who will ultimately prevail; rather, the issue is whether the plaintiff is entitled to offer evidence to support his claim." *Ravenswood Inv. Co., L.P. v. Bishop Capital Corp.*, 374 F. Supp. 2d 1055, 1059 (D. Wyo. 2005).

### III.   BRIEF FACTS

On June 17, 2010, Mr. Evert was fatally mauled by grizzly bear #646. [Complaint, ¶ 56] The IGBST had recently captured, injured, sedated and subjected the grizzly bear to multiple, painful and invasive procedures. [Complaint, ¶ 42, 44-45]   When the IGBST field crew left the dangerous, sedated grizzly bear before he recovered, the crew prematurely removed all closure/warning signs and left the area. [Complaint, ¶ 46-50]   The warning signs stated, "DANGER! BEAR TRAP IN THE AREA. THE AREA BEHIND THIS SIGN IS TEMPORARILY CLOSED. THE CLOSURE IS EFFECTIVE FROM 6-11-10 to 6-20-10." [Complaint, ¶ 49].   The grizzly bear capture and scientific research area should have remained closed to the public, including recreational users, for another three days as stated in the IGBST's own signage to ensure human safety.   The IGBST knowingly created a dangerous condition on National Forest Service land; consciously failed to warn against the specific and uniquely intense

danger; and failed to put in place a guard against the bear's danger by waiting until the bear recovered from its altered condition. [Complaint, ¶¶ 52, 68]. Each of these failures proximately caused Mr. Evert's violent death.

## IV.   ARGUMENT

Generally, the WRUA states "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on such premises to persons entering for recreational purposes." W.S. § 34-19-102. The WRUA further states that "an owner of land who either directly or indirectly invites or permits without charge any person to use the land for recreation purposes or a lessee of a state lands does not thereby:

(i)     Extend any assurance that the premises are safe for any purpose;
(ii)    Confer upon the person using the land the legal status of an invitee or licensee to whom a duty of care is owed;
(iii)   Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of the person using the land."

W.S. § 34-19-103 (i-iii). While the WRUA limits the liability of landowners who allow the public to use their land for recreational purposes free of charge, it "does not afford absolute immunity to landowners." *Holland v. Weyher/Livsey Constructors, Inc.,* 651 F. Supp. 409, 412 (D. Wyo. 1987). In addition to the requirement that the statutory definitions are met, the WRUA's "purpose is 'to encourage landowners to make land and water areas available to the public by limiting liability in connection therewith.'" *Id. (quoting Yalowizer v. Husky Oil Co.,* 629 P.2d 465, 469 (Wyo. 1981)). "The legislature intended to increase access to Wyoming's recreational areas, not to permit landowners to lay traps for the public and then claim immunity under the Act." *Id.*

The Interagency Grizzly Bear Study Team (IGBST) created a danger on Shoshone National Forest land when it trapped a grizzly bear for untold hours, sedated him, antagonized him and left him unrecovered in a drug induced state – all without any warning whatsoever to local residents nearby or recreationalists using the public land. When a defendant creates a

danger, and the duty to guard and warn against that danger is negligently and willfully ignored, as it was here, the defendant cannot avoid accountability for its failures.

### A.    THE CLOSED GRIZZLY BEAR CAPTURE AND SCIENTIFIC RESEARCH SITE WAS NOT A RECREATIONAL AREA, THEREFORE THE WRUA DOES NOT APPLY

When evaluating the application of the WRUA, this Court has made clear that the nature of the land dictates the analysis. The application of the WRUA must be restricted to its legislative purpose. Statutory immunity was provided to landowners to encourage recreational use of otherwise closed property. Ch. 9, Session Laws of Wyo., 1965. ("(A)n act to encourage landowners to make land and water areas available to the public by limiting liability in connection therewith.") As this Court recognized, "[t]he legislature intended to increase access to Wyoming's recreational areas . . ." *Holland*, 651 F. Supp. at 412. To hold that the WRUA applies to a closed grizzly bear capture and scientific research site would extend the Act's coverage far beyond its intended purpose.

In its motion, Defendant conspicuously failed to reference *Holland v. Weyher/Livsey Constructors*, Inc., 651 F. Supp. 409 (D. Wyo. 1987). In *Holland*, plaintiff was seriously injured when he fell through a coal tailings pile containing subsurface fires in an industrial subdivision near a residential area. The defendants argued the WRUA applied because the plaintiff "entered the land to hike and play." *Id.* at 412. This Court determined that the coal tailings pile did not qualify as recreational land even though the plaintiff was using the land for recreation. *Id.* at 412; *see also Yalowizer v. Husky Oil Co.*, 629 P.2d 465, 469 (Wyo. 1981)(WRUA did not apply to an abandoned service station). Similarly, while Mr. Evert was using the land for recreational purposes, under the unique circumstances here, he was not fatally mauled in a recreational area. The mauling occurred at a closed scientific research area, where a grizzly bear was recovering from being captured and drugged pursuant to the IGBST's invasive research. At the time of Mr. Evert's death, Site #3 in the Shoshone National Forest was closed to recreational purposes as defined by W.S. § 34-19-101(a)(iii), or any public purpose. [Complaint, ¶49] The Shoshone National Forest, Wyoming Game and Fish Department, and U.S. Forest Service permits in effect for that day and location required closure of the area. [Complaint, ¶¶25-26, 49]; *see also* 36 CFR

261.50; 36 CFR 261.51; and 36 CFR 261.53. Therefore, the land does not satisfy the requirement of being recreational land and the protections of the WRUA are inapplicable. *Holland*, 651 F. Supp. at 412.

The Tenth Circuit addressed this same issue in *Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976 (10th Cir. 1993). In Kansas, an owner of land must "either directly or indirectly" invite or permit any person to use the land for recreational purposes to be immune from liability. Applying the Kansas Recreation Use Statute, which has nearly identical language to W.S. § 34-19-103(a), the Tenth Circuit found evidence in the record that the area at issue was closed to the public. *Id.* at 981. The Court held, "[a] landowner who bars public access to its property has not directly or indirectly invited or permitted the public to use that property for recreational activities and thus is not entitled to immunity . . ." *Id.* at 981-82. Following the same reasoning, the WRUA does not apply here.

### B. THE IGBST DOES NOT BENEFIT FROM THE WRUA

Even assuming *arguendo* the WRUA applies, it does not apply to individuals or entities that are, by definition, not owners. The WRUA defines "owner" as "the possessor of a fee interest, a tenant, lessee, including a lessee of state lands, occupant or person in control of the premises." W.S. § 34-19-101(a)(ii). The IGBST does not meet the statute's definition as it neither owned nor controlled the land. Instead it was a permissive user pursuant to permit only. "When statutes are in derogation of the common law, they must be strictly construed and carefully adhered to." *State by and Through Dept. of Family Services v. Jennings*, 818 P.2d 1149, 1150 (Wyo. 1991) and *Reliance Ins. Co. v. Chevron U.S.A. Inc.*, 713 P.2d 766, 770 (Wyo. 1986). Accordingly, the IGBST does not benefit from the WRUA's immunity.

Plaintiff's allegations are based solely on the acts and allegations of members of the IGBST. [Complaint, ¶¶8-11] The willful and negligent acts at issue, and Mr. Erwin's subsequent fatal injury, occurred on the Shoshone National Forest. [Complaint, ¶21] The forest land is managed by the Department of Agriculture, an entirely different agency than the IGBST which is administered by the Department of Interior. That the IGBST was required to obtain permits to conduct its research from the Wyoming Game and Fish Department and the U.S. Fish

and Wildlife Service on the Shoshone National Forest belies its ownership status. [Complaint, ¶¶22-26] Since the purpose of WRUA is to make land available for public use, that purpose is not furthered by granting immunity to the IGBST -- an entity lacking any power to permit recreational use of land. Had Plaintiff made allegations against Shoshone National Forest's employees, the analysis pursuant to the WRUA may be different. The Notice of Claim in this case was properly served upon the appropriate federal agency, the United States Geological Survey/IGBST. The FTCA demands that suit be made generally against the United States of America, rather than the individual tortious federal agency or employees, however the IGBST cannot hide behind the procedural pleading technicality created by the FTCA. The IGBST, under the United States Geological Survey and the Department of Interior, is not immunized for its operations done pursuant to regulated permits on Forest Service land.

### C. THE IGBST CREATED THE UNNATURAL AND HIDDEN DANGER ON THE SHOSHONE NATIONAL FOREST

The WRUA does not apply in every circumstance and was not intended to afford absolute immunity to landowners. *Holland v. Weyher/Livsey Constructors, Inc.,* 651 F. Supp. 409, 412 (D. Wyo., 1987). The IGBST created and then unreasonably abandoned an unnatural, manmade and extremely dangerous hidden condition. This Court has previously recognized that the WRUA does not shield a landowner's common law duty to refrain from creating a danger or aggravating a naturally existing condition. *Holland,* 651 F. Supp. at 411; *see also Selby v. Conquistador Apts. Ltd.,* 990 P.2d 491, 494 (Wyo. 1999)(landowner owes a duty to avoid aggravating a hazard thereby significantly altering it from a naturally occurring condition); *Berry v. Tessman,* 170 P.3d 1243, 1246 (Wyo. 2007)("A plaintiff may show that an otherwise naturally occurring condition does not fall within this rule by showing (1) that the defendant created or aggravated the hazard; (2) that the defendant knew or should have known of the hazard; and (3) that the hazardous condition was substantially more dangerous than it would have been in its natural state.")

Akin to the facts here, in *Holland v. Weyher/Livsey Constructors, Inc.* plaintiff was injured on a landowner's abandoned coal tailings pile lacking any posted warning signs.

*Holland*, 651 F. Supp. at 411. The pile was manmade, unnatural, and significantly more dangerous than land in its natural condition. Defendants sought protection under the WRUA and this Court held that the defendants misapprehended the goal of the Act. **"The legislature intended to increase access to Wyoming's recreational areas, not to permit landowners to lay traps for the public and then claim immunity under the Act."** *Id.* at 412 (Emphasis added). A tranquilized grizzly bear left next to a prominent trail, without any warning signs, is a trap.

    *Smith v. United States*, 383 F. Supp. 1076 (D. Wyo. 1974), cited by Defendant, confirms the importance of the distinction between obvious and natural dangers in a WRUA context. In *Smith*, a 14-year-old boy visiting Yellowstone National Park got on his hands and knees to look at bubbling water in a thermal pool. *Smith*, 383 F. Supp. at 1079. The ground adjacent to the pool gave way and he fell into the thermal pool sustaining severe burns. *Id.* at 1079-80. This Court determined that the boy and his family had been repeatedly provided with specific written and verbal warnings about natural hot springs dangers in a Park brochure, on signs in the Mammoth Hot Springs area, and from other Park visitors. The Smith family even acknowledged these dangers on at least two occasions prior to the boy's injury. *Id.* at 1078-79. "By its appearance the area was one of **obvious danger** in which boiling water could be observed in a number of small pools within the area, and steam was visible arising from these pools of boiling water." *Id.* at 1079 (emphasis added). The Court determined there was no direct observation by government officials, or other communications or information that had come to the attention of such officials with respect to any danger relating to the thermal pool other than the obvious thermal dangers. *Id.* at 1080. Therefore, the United States owed no duty to keep the premises reasonably safe and warn of ***obvious*** dangers. *Id.* at 1081. In the present case, unlike in *Smith,* Defendant created a danger and then failed to provide any warning to Mr. Evert to alert him to the either natural or obvious dangers of a drugged and abandoned grizzly bear. [Complaint ¶¶ 50-52].

    Assuming for the sake of argument that the IGBST benefits from the protections provided to a landowner, the WRUA does not immunize the IGBST for its active negligence. In

*Vandervelde v. U.S.*, 1999 WL 33593713 (D. Wyo.), the Plaintiff was injured while cross-country skiing at the White Pine Ski Area. The cross-country trails were open to the public free of charge and the Plaintiff was injured while trying to avoid a truck that had been parked by a federal employee "directly in front of the trail's exit." *Id.* at *1. Defendant moved for summary judgment pursuant to the WRUA.

First, this Court held "[t]he statute only shields the landowner from liability for the actions of a person who uses the land for "recreational purposes." *Id.* and W.S. § 34-19-103 (No duty when. . . "an owner of land who either directly or indirectly invites or permits without charge any person to use the land for recreational purposes. . ." Because the defendant in *Vandervelde* was working, he was not using the land for "recreational purposes" and the Act did not apply. *Id.* Likewise, the IGBST team members were indisputably working at all times relevant to Plaintiff's claims and therefore the WRUA does not apply. [Complaint, ¶¶ 8-11]

Second, this Court held the WRUA does not apply when "the person using the land" and the "landowner" are one and the same. *Id.* "The intention of section 103(a)(iii) was to shield a landowner from the actions of a third-party recreationalist if that recreationalist injured another party upon the landowner's land. *Id.* Again assuming for argument's sake that the IBGST and the landowner are one in the same, the WRUA does not grant immunity.

Finally, this Court made it clear that the WRUA does not apply when a plaintiff alleges that a specific action of Defendant's employee was negligent. *Id.* at *3. The Court provided an example,

> [S]ay Landowner "L" let Snowmobiler "S" use L's land for recreation and S subsequently ran over Cross-Country Skier "C." Section 103(a) would prohibit C's cause of action against L, not against S. **However if L herself negligently ran over C, Section 103 would be inapplicable because C's injuries were not caused by a third-party "person using the land," they were caused by the landowner.**

*Id.* (Emphasis added). Through example the Court affirmed that the WRUA did not apply when the landowner's independent, affirmative negligence causes injury. Such negligence can be distinguished from instances when a landowner is either passively negligent (i.e. fails to inspect

his land for dangers) or where the landowner fails to monitor other recreationists on his land. The Court's reasoning makes logical sense by not legislatively encouraging a defendant to commit active negligence and injure another on his land with the assurance of immunity -- precisely what Defendant seeks here.

The IGBST is not immunized from its separate and distinct duty to conduct its capture operations with reasonable care, and avoid actively causing injury to another. *See Sabia v. Niagara Mohawk Power Corporation*, 87 A.D.3d 1291, 1293 (N.Y.A.D. 2011)(Judicial decisions determined New York's RUS "does not immunize a landowner or occupant from liability for affirmative acts of negligence unrelated to the condition of the land itself.")[1] Like the example above, Defendant does not get a pass for its own direct, active negligence. Plaintiff's Complaint is replete with allegations that separate and apart from the condition of the land; the IGBST's field crew's actions were negligent and caused Mr. Evert's death. [Complaint, ¶¶ 35-37, 39-41, 44-52]

Defendant created the drugged and dangerous grizzly bear hazard. [Complaint, ¶ 70] The grizzly bear that killed Mr. Evert at Site #3 following the warning sign removal was a hidden and artificial danger, not an open and obvious natural danger. A grizzly bear mother protecting its cubs in the forest could be considered a natural danger of hiking in bear country. Absent interference by man, such a bear could pose a danger that the Defendant, acting reasonably, would not necessarily discover. Mr. Evert knew the natural dangers of traveling in grizzly bear territory and had successfully avoided these dangers for forty years. However, Mr. Evert had no knowledge or warning of the IGBST's activities at Site #3, and there was nothing natural or obvious about the impaired and disturbed condition of this grizzly bear. A landowner is liable when he or she aggravates or creates a hazard, thereby significantly altering it and making it more dangerous than it would be in its natural state. *Berry*, 170 P.3d at 1246; *see also Holland*, 651 F. Supp. at 412. The IGBST researchers not only created and had knowledge of

---

[1] Defendants rely on this case on pages 5-6 of their brief.

the dangerous condition; they abandoned it for Mr. Evert, or any other unknowing victim to inadvertently encounter.

### D.   OBLIGATIONS WERE IMPOSED BY CONTRACT/IGBST ASSUMED A DUTY

The WRUA does not apply for the reasons set forth above. But even assuming that the WRUA applies in this specific situation, an independent duty was formed by contract and an assumption of duties. "A duty may arise by contract, statute, common law, or 'when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff.'" *Hatton v. Energy Elec. Co.*, 148 P.3d 8, 13 (Wyo. 2006)(*quoting Hamilton v. Natrona County Educ. Ass'n*, 901 P.2d 381, 384 (Wyo. 1995)). It is well established in Wyoming that a duty, including a duty to warn, can be created by contract. *Allmaras v. Mudge*, 820 P.3d 533, 537-38 (Wyo. 1991). Wyoming has "recognized that breach by a contracting party of an independent duty which arises out of the contractual relationship may give rise to an action in tort." *JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1197 (Wyo. 1992). Wyoming has explained how the failure to perform gives rise to a tort liability:

> Negligence which consists merely in the breach of a contract will not afford ground for an action by any one, except a party to the contract, or a person for whose benefit the contract was avowedly made . . . But where, in omitting to perform a contract, in whole or in part, one also omits to use ordinary care to avoid injury to third persons, who, as he could with a slight degree of care foresee, would be exposed to risk by his negligence, he should be held liable to such persons for injuries which are the proximate result of such omission.

*Brubaker v. Glenrock Lodge Int'l Order of Odd Fellows*, 526 P.2d 52, 58-59 (Wyo. 1974), *quoting Shearman & Redfield, Law of Negligence* (6th Ed.) s, 116.

The Tenth Circuit has ruled that a federal permit can be considered a contract. *See King v. U.S.*, 301 F.3d 1270, 1276 (10th Cir. 2002)(United States argued, and court agreed, that special use permit to occupy and use national forest land created a contract). Therefore regardless of whether the WRUA applies, nothing relieves Defendant of duties prescribed by permits and regulations, or as assumed by agreement. Even if the WRUA completely abrogates common law

duties, the WRUA cannot override duties imposed by permit or regulation, or voluntarily assumed.

The IGBST's capture operations took place on the Shoshone National Forest. Pursuant to 36 CFR 261.50; 36 CFR 261.51; 36 CFR 261.53 and the Shoshone National Forest Order 97-008, as a result of the IGBST's grizzly bear capture operations, areas located on the Shoshone National Forest were to be closed and marked on the ground with closure signs.

Federal law prohibits any person from taking a grizzly bear (Ursus arctos horribilis), a threatened species. 16 U.S.C. §1538(a)(1)(B) (*see also* 16 U.S.C. § 1532(19)). "The term "take" means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to engage in any such conduct." 16 U.S.C. § 1532(19). An exception is made for federal, state or tribal scientific or research activities. 50 CFR 17.40.

The IGBST sought and obtained a necessary subpermit from the U.S. Fish and Wildlife Service to conduct its capture operations. "On March 30, 2010, the IGBST was issued a 'Subpermit for handling research grizzly bears' from the U.S. Fish and Wildlife Service, United States Department of the Interior." [Complaint, ¶25] "The U.S. Fish and Wildlife Service Permit directed that, '**Every possible precaution shall be taken to avoid confrontations between bears and the public, including but not limited to closure or signing of the study sites.**'" *Id.* at ¶26 (Emphasis added). The subpermit required that all activities conducted under the subpermit be done in compliance with the terms and conditions of the Interagency Grizzly Bear Guidelines.

"IGBST's own guidelines for handling of grizzly bears dictate that '[t]he first and most important thing to accomplish before setting out is to touch base with the landowners and local state and federal officials.'" *Id.* at ¶27. "The IGBST guidelines clearly state that, '**Government and state employees have the obligation to protect people. The majority of the public assumes that they will be warned if dangerous animals are in the area . . . It all comes down to an issue of 'adequate warning.' When a research or manager can prevent an injury by informing the public, they have the duty to do so . . . Bear researchers and managers must make careful decisions and always warn the public when a trap has been placed in the**

**vicinity or when there is a potential for a confrontation.  Education and communication are the best tools when working with the media and the public.'"**  *Id.* at ¶28 (Emphasis added).

Additionally, the IGBST was required to obtain a permit from the Wyoming Game and Fish Department to take, capture, and handle Wyoming wildlife for scientific research, educational or special purposes. *See* W.S. 23-1-302 and *Wyoming Game and Fish Commission, Chapter 33 Regulation Governing Issuance of Scientific Research, Educational or Special Purpose Permits.*  As a condition of the permit, the Wyoming Game and Fish Department issued requirements, limitations and stipulations. *Id.*  "In January of 2010, the IGBST received a Chapter 33 permit (#439) from the Wyoming Game and Fish Department.  The permit allowed the IGBST '[t]o conduct capture operations in order to monitor grizzly bear population, survival, and occupancy in the greater Yellowstone ecosystem for grizzly bear recovery efforts.'"  [Complaint, ¶23]  "The Chapter 33 permit specifically mandated that, **'All trap sites shall occur on public lands and will be signed to alert the public if they inadvertently approach a baited trap site.'"**  *Id.* at ¶24 (Emphasis added).  The IGBST was legally required by permit and regulation to close the study site and warn people of its dangers.

Moreover, independent of whether any other duty existed, the IGBST voluntarily assumed a duty.  An assumed duty must be performed with reasonable care even when no duty previously existed.  WCPJI 3.12, *Valance v. VI-Doug, Inc.*, 2002 WY 113 ¶ 15, 50 P.3d 697, 703 (Wyo. 2002).  Beyond the permits and regulations, "[p]er discussions with the Shoshone National Forest, Chad Dickinson [IGBST crew member] assumed the responsibility to speak with the Kitty Creek residence occupants and inform them of their trapping activities."  [Complaint, ¶ 34]  "The field crew talked to the residents of just one of the fourteen cabins throughout the approximately three-week trapping period despite the field crew's twice daily travel past the cabins." *Id.* at ¶35.  "The IGBST field crew claims they saw Erwin at least twice at his cabin, yet the IGBST field crew never informed or warned Erwin of their trapping activity." *Id.* at ¶36.  The IGBST failed to perform the obligations it assumed by agreement.

Applying the principles set forth above, the IGBST owed duties established by both the permits and regulations that allowed the team to conduct operations on the Shoshone National

Forest, and the assumed duty to speak with Kitty Creek residence occupants. The IGBST expressly agreed to follow the requirements imposed by the Shoshone National Forest, U.S. Fish and Wildlife Service and Wyoming Game and Fish permits, in addition to the IGBST's own guidelines. Those contractual obligations mandated the IGBST sign and alert the public, inform and warn landowners, and close the very site where Mr. Evert was fatally mauled. Whatever protections the IGBST arguably enjoyed under the WRUA were forfeited when it contractually promised the U.S. Fish and Wildlife Service, Shoshone National Forest and Wyoming Game and Fish Department that it would warn the public and landowners, and close its capture and research site. Those promises -- and IGBST's failure to keep those promises -- are facts as pled that defeat Defendant's Motion to Dismiss.

E.    **PLAINTIFF PLED WILLFULNESS**

An owner of land is stripped of immunity when a defendant willfully or maliciously fails to guard or warn against a dangerous condition, use, or activity. W.S. § 34-19-105(a)(i). Assuming *arguendo* this Court finds that the WRUA applies and abrogates all applicable common law, a proposition directly contrary to authority, Plaintiff has sufficiently pled that the IGBST acted willfully, creating a question of fact inappropriate for determination at the motion to dismiss stage. [Complaint, ¶¶ 61, 62, 64-76, 79].

Proving the IGBST acted willfully by failing to guard or warn requires more than mere negligence. Defendant requests this Court dismiss Plaintiff's allegations on their face but willful conduct is a factual question not appropriate at the motion to dismiss stage. Curiously, not one case cited by Defendant provides authority for the drastic result of dismissal. Considering the facts of this case, accepting the allegations as true, and construing them in the light most favorable to Plaintiff, as this Court is required to do, Defendant's motion must be denied.

i.    **Standard of Review**

Defendant radically overreaches by stating "none of the alleged facts in plaintiff's complaint could possibly amount to a willful or malicious failure" or meet the definition of willful and wanton. [Defendant's Motion, pgs. 5-6]. At this early stage, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations" and "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)(internal citations and quotations omitted); *see also Osborn v Emporium Videos*, 848 P.2d 237, 239 (Wyo. 1993)("Dismissal is a drastic remedy, and is sparingly granted."); and *Martinez v. Associates Fin. Services Co. of Colorado, Inc.,* 891 P.2d 785, 787 (Wyo. 1995)("On the W.R.C.P. 12(b)(6) dismissal, we divine the "facts" by viewing [plaintiff's] pleadings with a liberality verging on charity, resolving any doubt in favor of her contentions.") *Johnson v. Aetna Cas. & Sur. Co. of Hartford, Conn.*, 608 P.2d 1299, 1302 (Wyo. 1980)("A complaint is not subject to dismissal unless there is no doubt that the plaintiff cannot prove any set of facts that would entitle him to relief.") To accept Defendant's motion to dismiss, the Court would have to ignore the applicable standard of review.

### ii.   Applicable Standard of Willfulness is A Question of Fact

Because there is no Wyoming statute or Supreme Court opinion that defines "willful"[2] under the WRUA, this Court must "attempt to predict how [Wyoming's] highest court would rule." *FDIC v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000). Contrary to Defendant's insistence, this Court must not resort to other state's decisions that invoke an inapposite standard of willfulness. *See* Footnote 5, herein.

Defendant agrees that the terms willful and malicious are similar, if not interchangeable, with the phrase willful and wanton in Wyoming. [Defendant's motion, pg. 6] Wyoming defines willful and wanton misconduct as the "intentional doing of an act, or an intentional failure to do an act, in reckless disregard of the consequences, and under such circumstances and conditions

---

[2] The statutory language willful is used in the alternative to malicious, preceding the disjunctive "or."

that a reasonable person would know, or have reason to know, that such conduct would, with a high degree of probability, result in harm to another." W.C.P.J.I. 4.06 and *Bertagnolli v. Louderback*, 67 P.3d 627, 632 (Wyo. 2003). *Danculovich v. Brown*, 593 P.2d 187, 191 (Wyo. 1979), states that willful and wanton misconduct:

> tends to take on the aspect of highly unreasonable conduct, or an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. It is not with the intent to cause injury or damage, but it must be more than mere mistake resulting from inexperience, excitement or confusion, and more than mere thoughtlessness or inadvertence, or simple inattention.

The definition of willfulness boils down to whether Defendant had "knowledge of the dangerous condition and whether Defendant acted intentionally in disregard of known risks." *Bertagnolli*, 67 P.3d at 634.[3]   Plaintiff clearly alleged Defendant's misconduct meets this standard. [Complaint, ¶ 79].

Importantly, the Wyoming Supreme Court has consistently treated the question of whether conduct was willful and wanton as a question of fact. *Errington v. Zolessi*, 9 P.3d 966, 973 (Wyo. 2000)(in the punitive damage context); *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 837 (Wyo. 1994); E.E.O.C., 27 Fair Empl. Prac. Cas. (BNA) ¶ 1291 (Dec. 18, 1981)(what constitutes willful violations of the ADEA is a question of fact); *Hamilton v. Swigart Coal Mine*, 59 Wyo. 485, 143 P.2d 203, 206 (1943)("[W]hat is willful misconduct is a question of fact.") This Court has previously cautioned further that "'when the willfulness of an actor's conduct is questioned, courts should be reluctant to grant summary judgment,' let alone a motion to dismiss, 'because the actor's credibility is often a central issue in such cases.'" *Schwartz v. Hawkins & Powers Aviation, Inc.*, No. 04-CV-195-D, 2006 WL 1028392, at *5 (D. Wyo. March 31, 2006).

### iii.   Plaintiff's Allege Willful Conduct

---

[3] In its brief, Defendant improperly cherry picks those cases outside of Wyoming wherein willfulness requires a showing of an intent to injure or harm – a standard Wyoming has specifically disavowed. *Danculovich v. Brown*, 593 P.2d 187, 191 (Wyo. 1979)("[Willful and wanton misconduct] is not with the intent to cause injury or damage . . .")

As the record stands, the IGBST ensnared a grizzly bear for untold hours, drugged the bear and then antagonized him by pulling his tooth without analgesia, tattoo stamped his upper lips, tagged his ears, administered antibiotics, took samples and fitted him with a radio collar. [Complaint. ¶¶ 42, 44-45, 76] The IGBST did so in what had otherwise been an open recreational area with extensive trails and decommissioned roads knowingly used by the pubic. [Complaint. ¶¶ 40-41] The closed trap site was located in a National Forest,[4] on a well-defined road, just ¾ of a mile from the cabin where Mr. Evert lived. [Complaint. ¶¶ 39-41, 63-65] The IGBST did not even need to speculate as to who might use the land because it knew, at the very least, that residents lived in United States Forest Service cabins that the crew traveled past twice daily. *Id.* at ¶¶33-35. The IGBST consciously chose not to alert these known residents by written notification, posted notifications, taped notification closures or verbal warnings. *Id.* at ¶ 67. Had the IGBST made contact with the residents as it assumed the duty to do, they would have learned about Mr. Evert's use of the land. *Id.* at ¶¶ 35-36, 66-67.

After the grizzly bear was ensnared and invasive procedures were performed, and despite its own protocol and procedures, the IGBST failed to guard and left the grizzly bear before he recovered from the effects of sedation (without any reversal through antagonist drugs). *Id.* at ¶¶ 46-48, 75. Notwithstanding years of collective experience focused on the danger of grizzly bears during the capture and recovery process, and the acknowledgement that public warnings were necessary, the IGBST removed each and every warning sign at the site as they left. *Id.* at ¶52, 69-73. The closure signs were mandated by the Shoshone National Forest's closure order, the Wyoming Game and Fish Department permit and the U.S. Fish and Wildlife Service subpermit. *Id.* at ¶¶ 22-26. As a result of Defendant's intentional removal of the warning signs, there were no warning signs of any type when Mr. Evert approached the closed site. *Id.* at ¶52, 69-73. The signs the IGBST removed aptly acknowledged the bear's dangerous condition with the use of the word "DANGER!" *Id.* at ¶ 49. The IGBST chose not to guard against, or warn of the immediate, known and specific danger of a four-hundred and twenty-five pound grizzly bear

---

[4] "It is the policy of the Congress that the national forests are established and shall be administered for outdoor recreation . . ." 16 U.S.C. § 528.

recovering from ensnarement, chemical immobilization, surgery and handling in a baited environment. *Id.* at ¶ 68. This Court simply cannot find that those allegations are insufficient to state a claim that the IGBST willfully failed to guard or warn against a dangerous condition, use or activity. As is required at this stage, Plaintiff has sufficiently pled facts to show more than a mere possibility that the defendant is liable for the willful failure to guard and warn.

### iv.    Similar Cases Wherein Willfulness Either Was Proven or Created a Genuine Issue of Material Fact

The following cases from other jurisdictions apply similar standards of willfulness as Wyoming and are therefore instructive, and provide further guidance supporting denial of Defendant's motion to dismiss.[5]

The Eighth Circuit in *Umpleby v. United States of America*, a FTCA case, reversed a grant of summary judgment and held that whether the government's conduct was willful or malicious presents a genuine issue of material fact. 806 F.2d 812, 813 (8th Cir. 1986). In *Umpleby*, plaintiff was injured in a vehicle accident and claimed the road was improperly designed with a 90-degree curve, and without any posted warning signs. *Id.* at 814. Under the same statutory language, and following a similar standard as applies in Wyoming, the court held that there was a genuine issue as to whether the government had 1) knowledge of a situation

---

[5] The Tenth Circuit does not have any cases on point.

In *Otteson v. United States*, 622 F.2d 516 (10th Cir. 1980), the Tenth Circuit reviewed the grant of *summary judgment* to the government under Colorado's Recreation use statute. Summary judgment was affirmed because, unlike here, Plaintiff failed to allege willful government conduct, and no such evidence of willfulness was presented to the trial court below. *Id.* at 520. By contrast, see Complaint, ¶¶ 61, 62, 64-76.

In *Maldonado v. United States*, a FTCA case, the Tenth Circuit refused to address the issue of willfulness because New Mexico's recreational use statute does not contain an exception for willful conduct. 893 F.2d 267, 270 (10th Cir. 1990).

Defendant inappropriately relies on *Klepper v. City of Milford, Kansas*, 825 F.2d 1440 (10th Cir. 1987), which, importantly, proceeded to trial on the issue of willfulness. In Klepper, the Tenth Circuit analyzed the definition of willfulness specific to Kansas tort law, and held that intent to cause an injury or a designed purpose to do wrong was required. *Id.* at 1446-47.   With reference to Kansas' precedents and pattern instructions, the court made clear that Kansas' willful failure to warn required more than mere reckless or knowing failure to warn with awareness of the possible consequences" – Wyoming's standard for willfulness. *Id.* at 1447. In Kansas, "conduct was not willful unless defendant "*intended to injure* the plaintiff or otherwise had a *designed purpose or intent to do wrong.*" *Id.* at 1446-47; *see also Bingaman v. Kansas City Power & Light Co.*, 1 F.3d 976, 983 (1993). Therefore, *Klepper* does not provide persuasive authority to this Court; *see also Matthews v. State*, 825 P.2d 224, 230 (N.M. Ct. App. 1991)(Does not support Defendant's contention as New Mexico requires intent to cause injury).

requiring the exercise of ordinary care and diligence to avoid injury to another; 2) ability to avoid resulting harm by ordinary care and diligence; and 3) omitted such care and diligence when to an ordinary person it must be apparent that the result likely would prove disastrous to another. *Id.* at 815-16. Following the same standard, the Supreme Court of North Dakota *reversed summary judgment* in *Stokka v. Cass County Electric Cooperative, Inc.*, 373 N.W.2d 911, 915-916 (N.D. 1985), holding that the question of whether the failure to guard or warn was willful was for a jury to determine (individual struck the defendant's unmarked guy wire while snowmobiling).

Willful conduct was proved in *Stephens v. United States of America*, 472 F. Supp. 998 (C.D. Ill. 1979), following trial wherein the government's own actions created the dangerous and hidden condition, and the government had actual knowledge the danger existed. In that FTCA action, plaintiff dove into a lake and hit his head on a submerged tree stump. *Id.* at 1001. The government could not establish a rationale for its failure to remove the trees or cut them level to the ground. *Id.* at 1003. The government knew the tree stumps existed. *Id.* "No swimming" or "no diving" signs were not posted along the route where plaintiff entered the park. *Id.* at 1005. The applicable standard under Illinois law required highly unreasonable conduct, or an extreme departure from ordinary care. *Id.* at 1016. The court analyzed the risk to swimmers and the gravity of harm and balanced that against the ease with which the government could have warned users. Because the government allowed the tree stump to exist and failed to warn of its existence, the court held willful misconduct existed. *Id.* at 1017.

A willful failure to guard and warn was likewise proved in *Davidow v. United States of America*, 583 F. Supp. 1170 (W.D. Penn. 1984). Also pursuant to the FTCA, and following trial, the court held that failure of the government to replace a missing danger buoy warning of dangers at a peninsula point during boating season, and subsequently resulting in a boat collision, constituted willfulness.

A willful failure to guard was again proved in *Rosa v. United States of America*, 613 F. Supp. 469 (M.D. Penn. 1985). In *Rosa*, a FTCA action, a child drowned after a government park attendant told children that using inner tubes in a roped-off swimming area at a lake was prohibited, but that they could go outside the roped-off area without a warning that the water was

deeper in that area. The court found the government liable due to its knowledge that the lake floor was deep and dangerous to non-swimmers. *Id.* at 477.

In denying summary judgment, the court in *Von Tagen v. United State of America*, a FTCA action, determined a genuine issue of material fact existed as to the government's willful failure to warn. 557 F. Supp. 256 (N.D. Ca. 1983). The plaintiff in that case was injured in an automobile accident due to the alleged failure of the government to erect a guardrail or warning sign at a dangerously sharp curve. *Id.* at 258. "Under California law, '[w]illful or wanton misconduct is intentional wrongful conduct, done either with a knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results.'" *Id.* at 259.

In *Sulzen ex. rel. Holton v. U.S.*, 54 F.Supp.2d 1212, 1218 (D.Utah.1999), a FTCA action, a person was killed at a picnic area when she was struck and killed by a rock which was dislodged by two teenagers climbing on a cliff above. The Court denied summary judgment on the issue of whether there was a willful or malicious failure to guard or warn. There was some testimony that a park ranger observed shale rocks along the river although he denied knowing the rocks were falling form the cliff above. *Id.* at 1218. The court held "the question of whether [the park ranger] knew that the rocks were falling from the overhanging cliff requires a credibility determination, a determination not appropriate at the summary judgment stage." *Id.* "The question of whether the wilful or malicious exception applies will be decided at trial." *Id.*

*See also e.g., Miller v. U.S.*, 945 F.2d 1464, 1467 (9th Cir.1991)(reversal of summary judgment involving FTCA and Arizona RUA because "In cases in which wilfulness is an issue, summary judgment should be granted with caution, since questions such as intent or motive are presented...Here, the facts, which are undisputed for summary judgment, would, if true, justify the conclusion that the government's failure to warn was wilful-i.e. made with reckless disregard for the possible result.")(citations omitted); *Mattice By and Through Mattice v. U.S., Dept. of Interior,* 969 F.2d 818, 822 (9th Cir. 1992)(involving FTCA and California RUA --"The cases in which we have upheld a claim of willful misconduct under California law have all involved a hidden peril."); *Termini v. U.S.*, 963 F.2d 1264, 1266 (9th Cir. 1992) (involving FTCA and

California RUA -- "We conclude that the United States' actions in building and maintaining a road that ends, without warning, at a cliff, and which allows absolutely no margin for driver or mechanical error, or for adverse natural conditions, constituted willful and malicious conduct. The Californian cloak of landowner immunity does not extend to such behavior"); *McMurray v. U.S.*, 918 F.2d 834, 838 (9th Cir. 1990)(Involving FTCA and Nevada RUA – "the government consciously failed to post a sign at Lee Hot Springs despite its knowledge of the danger of persons being burned presented by this spring. This constitutes a willful failure to warn under Nevada law."); *Miller v. U.S.,* 442 F. Supp. 555 (N.D. Ill. 1976)(After trial, the court found willful failure to guard or warn in a FTCA case wherein no signs were posted to indicate the depth of water in a federal lake); *Adkisson v. City of Seattle*, 42 Wash. 2d 676 (Wash. 1953)(Jury question whether there was wanton misconduct in leaving dirt on roadway without warning); *McGarvey v. City of Seattle*, 62 Wash. 2d 524 (Wash. 1963)(Jury question whether city, which allegedly left a manhole unguarded without a barricade, was guilty of wanton misconduct).

Even at this most early stage, in light of the known magnitude of the danger the IGBST created combined with the IGBST's location of the capture site; failure to guard against the danger; failure to warn either landowners or recreationalists in the area; and removal of warning signs at the closed trap site, plaintiff has shown more than a sheer possibility that Defendant acted willfully. What the IGBST knew, did or intentionally chose to do or ignore is central to this case, and those issues cannot be resolved at the motion to dismiss stage. Plaintiff alleges that the IGBST's highly unreasonable conduct, in the face of a high degree of danger, was committed in reckless disregard of the consequences. Plaintiff has shown more than enough to raise a right to relief above the speculative level, and therefore defendant's motion to dismiss must be denied. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

### V. CONCLUSION

Defendant's motion asks the Court to ignore the standard of review, disregard applicable law, prevent any factual discovery from occurring, and absolve the government of liability for multiple willful and negligent acts and omissions that cost a man his life in one of the most terrifying ways imaginable. Despite its attempt, the WRUA does not apply to a grizzly bear

capture and scientific research site closed to all other uses; to the IGBST and its employees; or to unnatural, hidden dangers the IGBST created on the land. Even assuming the WRUA is applicable here, a separate duty arose by agreement and pursuant to permits and regulations. And, finally, even if no duty was assumed by agreement and pursuant to permits and regulations, the IGBST's conduct was willful, which by statute eliminates any immunity.

WHEREFORE, Plaintiff respectfully requests this Court deny Defendant's Motion to Dismiss in its entirety for all the reasons stated above.

## VI.   REQUEST FOR HEARING

Plaintiff respectfully requests an oral hearing on all issues raised in Defendant's Motion pursuant to U.S.D.C.L.R. 7.1.

DATED this 13th day of January, 2012.

_Emily R. Rankin_
Emily R. Rankin
Mark L. Aronowitz
THE SPENCE LAW FIRM, LLC
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I, Emily R. Rankin, do hereby certify that I have this 13th day of January 2012, served a true and accurate copy of the above and foregoing responsive motion via electronic service, to the following:

Christopher A. Crofts
Nicholas Vassallo
C. Levi Martin
United States Attorney's Office
Post Office Box 668
Cheyenne, Wyoming 82003-0668
Telephone: 307.772.2124
Facsimile: 307.772.2123

*Attorneys for Defendant United States of America*

Emily R. Rankin