IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

FEB 15 2012

Stephan Harris, Clerk
Cheyenne

| | |
|---|---|
| YOLANDA EVERT, individually and as the Qualified Wrongful Death Representative of Erwin Evert, deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 11-cv-339-F |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Yolanda Evert, the appointed Wrongful Death Representative for her deceased husband, Erwin F. Evert (Evert), sues Defendant United States of America for the negligent or wrongful acts and omissions of government employees, which Plaintiff claims resulted in Evert inadvertently entering a bear trap site on June 17, 2010, leading to his fatal mauling by a 425 pound adult male grizzly bear. Document (Doc.) No. 1. The United States argues for dismissal under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), which provides for a limited waiver of sovereign immunity and

requires the claim be for "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* The United States argues that a private person in its circumstances would be protected against liability under Wyoming's Recreational Use Act, Wyo. Stat. §§ 34-19-101 *et. seq.* (WRUA), because a landowner charging no fee for recreational use owes no duty of care to keep the area safe for entry or recreational use by others, or to give any warning of a dangerous condition, use, structure or activity. Wyo. Stat. § 34-19-102. Thus, as argued by the United States, it is not liable for the alleged wrongful death of Evert under Wyoming law.

For the reasons that follow, the Court will deny the United States' motion for dismissal, concluding the Complaint contains sufficient factual content when viewed in the light most favorable to the Plaintiff, to allow a reasonable inference that the United States' acts and omissions plausibly satisfy the "willful or malicious" standard, thus permitting this suit to go forward notwithstanding the protections provided landowners under the WRUA.

## BACKGROUND

In January 2010, the Interagency Grizzly Bear Study Team (IGBST) received a Wyoming Game and Fish Department permit to conduct capture operations in order to monitor grizzly bears in the greater Yellowstone ecosystem for recovery efforts. Doc. No. 1, ¶ 23. In March 2010, the IGBST received a U.S. Fish and Wildlife Service subpermit for handling research grizzly bears. *Id.* at ¶ 25. From May 27, 2010 until June 17, 2010, the IGBST conducted grizzly bear capture operations in the Kitty Creek drainage of the North Fork of the Shoshone River, seven miles from the Yellowstone East Entrance. *Id.* at ¶ 30. These operations consisted of three trap sites in Kitty Creek containing road kill baits and scent lure. *Id.* at ¶ 32. Sometime between June 16-17, 2010, an adult male grizzly bear was captured at one of the Kitty Creek trap sites. *Id.* at ¶ 42. On June 17, 2010, the IGBST crew immobilized the bear, pulled the bear's tooth, tattoo-stamped its upper lip, tagged its ears, administered antibiotics, took samples and fitted the bear with a radio collar. *Id.* at ¶¶ 44-45. Notwithstanding IGBST procedures requiring the crew to remain at the site until the bear is ambulatory, the crew left the bear when it was showing just limited signs of recovery, in order to check another trap site. *Id.* at ¶¶ 46-47. Upon leaving, the crew removed all warning signs which had stated,

"DANGER! BEAR TRAP IN THE AREA.  THE AREA BEHIND THIS SIGN IS TEMPORARILY CLOSED.  THE CLOSURE IS EFFECTIVE FROM 6-11-10 TO 6-20-10." *Id.* at ¶ 49.

Evert lived in a Forest Service permitted cabin at the bottom of the Kitty Creek drainage. *Id.* at ¶ 33.  No one informed him of the IGBST's trapping activity and he had not previously been in the vicinity of the trap site area. *Id.* at ¶ 36.  Shortly after the IGBST crew removed the warning signs, Evert walked into the trap site area, encountered the recovering adult male grizzly bear and was fatally mauled.

The Shoshone National Forest Closure Order for grizzly bear trapping and collaring, the Wyoming Game and Fish Department permit, the U.S. Fish and Wildlife Service subpermit, and the IGBST's policies, procedures and guidelines for baiting, trapping, handling and releasing research grizzly bears require signage and/or written warnings or precautions to alert the public and local landowners of capture operations to avoid grizzly/human confrontations. *Id.* at ¶¶ 22-24 & 26-28.  The Plaintiff alleges none of these requirements were satisfied in this case.

Based on these allegations, the Plaintiff further alleges the United States and its employees engaged in "willful and negligent" acts and omissions which "were

unreasonable and in disregard of a known risk and/or so obvious that it must have been aware of the risks and so great as to be obvious that harm would follow." *Id.* at ¶¶ 61, 79.

## STANDARD FOR DISMISSAL

"In reviewing a Fed. R. Civ. P. 12(b)(6) dismissal, a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1159 (10th Cir. 2010). "To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)(citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(citation and quotation marks omitted). Additionally, plausibility occurs when "[t]he allegations . . . if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla. ex. rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## DISCUSSION

Given that the United States is seeking immunity against suit under the terms of the WRUA, the Court's analysis necessarily begins with the relevant provisions of that law:

> (a) Except as specifically recognized by or provided in W.S. 34-19-105, an owner of land who either directly or indirectly invites or permits without charge any person to use the land for recreational purposes or a lessee of state lands does not thereby:
>
> (i) Extend any assurance that the premises are safe for any purpose;
>
> (ii) Confer upon the person using the land the legal status of an invitee or licensee to whom a duty of care is owed;
>
> (iii) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of the person using the land.

Wyo. Stat. § 34-19-102.

> (a) Nothing in this act limits in any way any liability which otherwise exists:
>
> (i) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. . . .

Wyo. Stat. § 34-19-105.

The Plaintiff advances several arguments to suggest that the WRUA does not apply. None of these arguments is persuasive. First, the Plaintiff argues that the closed capture area is not a recreational area. However, the WRUA does not use the phrase "recreational area," but rather discusses "land" and its use for recreational purposes. There is no dispute that the United States permitted recreational use of the forest in the Kitty Creek drainage, without a fee, nor is there any dispute that walking in a national forest is a recreational use of public land. This area of the forest was accessed by Evert in the manner of walking on a well-defined trail, which was a decommissioned road. Doc. No. 1, ¶¶ 41 & 51.

Second, the Plaintiff argues that the IGBST should not benefit from the WRUA because it is not the owner of the land. This argument also lacks merit. The United States of America is the defendant in this case, and it is the owner of the land used by Evert. The WRUA does not require the landowner to be the same person as the entity who may have made the premises unsafe for recreational use. If the requirements of the WRUA are met, the law limits landowner liability "to encourage landowners to make land and water areas available to the public." *Holland v. Weyher/Livsey Constructors,*

*Inc.*, 651 F.Supp. 409, 412 (D. Wyo. 1987) (quoting *Yalowizer v. Husky Oil Co.*, 629 P.2d 465, 469 (Wyo. 1981)).

With this said, however, the Court does agree with the Plaintiff that the WRUA does not apply in every circumstance to limit liability. Significantly, the WRUA does not limit liability in cases of injury or death resulting from a landowner's "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." Wyo. Stat. § 34-19-105.

The Plaintiff has made no allegation that the United States acted with the requisite intent to injure implied by the term "malice." Accordingly, the Court's inquiry will focus on whether there was a willful failure to guard or warn. On this point, the United States argues that the Court should look to the definition of "wilful and wanton misconduct" in the context of landowner liability law to understand of the meaning of "willful" as used in the WRUA. "The usual meaning of wilful and wanton misconduct is that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must have been aware of it and so great as to make it obvious that harm would follow. It is usually accompanied by a conscious indifference to the consequences amounting to a willingness that they shall follow. [] Wilful and wanton

conduct is not in the strict sense negligence since it involves intent, not inadvertence." *Yalowizer*, 629 P.2d at 470, n. 6 (citations omitted). Applying this standard, the United States argues there are no facts, nor even allegations to suggest any intentional desire to harm, nor facts to suggest unreasonable disregard of a risk so great as to make it obvious that harm would follow.

The Court is not convinced that the proper test for willful failure to guard or warn is best understood from the definition of wilful and wanton misconduct. First, wilful and wanton misconduct denotes an act of commission, while willful failure to guard or warn denotes an actor's failure to act or an intentional omission (rather than an actor's intentional desire to harm, kill or maim). The Court is convinced, however, that the Plaintiff must provide factual content from which a reasonable inference can be made that the government's failure to guard or warn involves intent, not inadvertence, by way of facts showing that the government disregarded a known or obvious risk and that the risk was so great as to make it obvious that harm would follow. Finally, applying law from jurisdictions with identical "willful or malicious failure to guard or warn" language, the Court will also require factual content from which a reasonable inference can be made

that the risk was neither obvious to those entering the premises nor inherent in the recreational activity. *See, e.g., Blake v. United States*, 1998 WL 11180 (E.D.Pa. 1998).

Applying this standard and viewing the facts and allegations in the light most favorable to the Plaintiff, a reasonable inference exists to find that the United States' acts and omissions plausibly satisfy the willful standard for the exception provided in Wyoming statute section 34-19-105. This is not a case where the United States merely knew of a dangerous forest condition or of certain activities that were occurring in the forest. Rather, the United States' policies, permits and warning protocols display actual knowledge by government agents of the specific risk of mauling inherent in baiting, trapping, handling, and releasing research grizzly bears. A grizzly bear mauling would be a great risk presented to an unsuspecting, recreating person who encounters a research grizzly bear recovering from having been trapped, immobilized and handled. The Plaintiff also alleges the United States knew of the permitted cabin sites in the Kitty Creek drainage, and knew that the extensive trail system in this area was used by the public. Because of this, it is reasonable to infer that the United States knew of the risk and danger presented by the recovering research grizzly bear which caused Evert's death, and the United States could have anticipated use by the public of the trail to the trap site

where the grizzly bear was left unattended and without signage. Finally, the Plaintiff alleges that the dangers presented by the IGBST's bear trap operations were not known or obvious to the public or to Evert, but were sufficiently obvious to the United States that it can reasonably be inferred that a fatal mauling would follow.

Thus, the Plaintiff's factual allegations contain the important elements of (1) actual knowledge by the government landowner of a danger that is, (2) sufficiently great to make it obvious to the government landowner that the specific risk and harm of a bear mauling would follow, and (3) not known to Evert, nor obvious to those entering the premises, nor inherent in the activity of walking down a forest trail.

Therefore, the "willful failure to guard or warn" exception to the WRUA remains available to the Plaintiff at this stage of the proceedings, and the United States' Motion to Dismiss is hereby DENIED.

Dated this _15_ day of February, 2012.

NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE