IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

YOLANDA EVERT, individually and as
the Qualified Wrongful Death
Representative of Erwin Evert, deceased,

      Plaintiff,

      vs.

UNITED STATES OF AMERICA,

      Defendant.

Case No. 11-cv-339

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

This matter comes before the Court on motion to dismiss by the Government on the basis that the claim brought in the case is subject to the exception from the waiver of immunity in the Federal Tort Claims Act (FTCA) for a claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The questions before the Court are (1) whether the challenged conduct (removal of closure signs before the grizzly bear left the study site)

involves an element of judgment or choice and, if so, (2) whether that judgment or choice is
of the kind that the discretionary function exception was designed to shield.

## BACKGROUND

From May 27, 2010 until June 17, 2010, the Interagency Grizzly Bear Study Team
(IGBST) conducted grizzly bear capture operations in the Kitty Creek drainage of the North
Fork of the Shoshone River, seven miles from Yellowstone National Park's East Entrance.
Document (Doc.) No. 1, ¶ 30. These operations consisted of three trap sites containing road
kill baits and scent lure. *Id*. at ¶ 32. Sometime between June 16-17, 2010, an adult male
grizzly bear was captured at one of the Kitty Creek trap sites. *Id.* at ¶ 42. On June 17, 2010,
the IGBST crew immobilized the bear, pulled the bear's tooth, tattoo-stamped its upper lip,
tagged its ears, administered antibiotics, took samples and fitted the bear with a radio collar.
*Id.* at ¶¶ 44-45. Following these activities, the crew left the bear when it was showing
limited signs of recovery, in order to check another trap site. *Id.* at ¶¶ 46-47. Upon leaving,
the crew removed all warning signs which had stated, "DANGER! BEAR TRAP IN THE
AREA. THE AREA BEHIND THIS SIGN IS TEMPORARILY CLOSED. THE
CLOSURE IS EFFECTIVE FROM 6-11-10 TO 6-20-10." *Id.* at ¶ 49.

Erwin Evert lived in a Forest Service permitted cabin at the bottom of the Kitty Creek
drainage. *Id.* at ¶ 33. On June 17, 2010, shortly after the IGBST crew removed the closure

2

signs, Evert walked into the trap site area, encountered the recovering grizzly bear and was fatally mauled.

## STANDARD OF REVIEW

This Court must convert the Government's Rule 12(b)(1) motion to dismiss the FTCA claims to a summary judgment motion under Rule 12(b)(6) "'[i]f the jurisdictional question is intertwined with the merits of the case.'" *Franklin Sav. Corp. v. U.S.*, 180 F.3d 1124, 1129 (10th Cir. 1999)(citing *Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir.1997), quoting *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir.1987)). Whether the discretionary-function exception applies is such a question. *Id*. Summary judgment should be granted when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## ANALYSIS

The FTCA created a limited waiver of sovereign immunity from suit for certain specified torts of federal employees. *Dalehite v. United States*, 346 U.S. 5, 17 (1953). Several exceptions to this waiver are contained within the FTCA, including an exception for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the

3

Government, whether or not the discretion involved be abused." 18 U.S.C. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandenese (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). While exceptions to the FTCA are to be narrowly construed, the discretionary function exception "poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction," preceding any negligence analysis. *Miller v. United States*, 710 F.2d 656, 662 (10th Cir. 1983), *cert denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983).

The principles set forth in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) guide the Court in its application of the discretionary function exception. The first consideration is whether the challenged action "is a matter of choice for the acting employee." *Id.* at 536. If a statute, regulation, or policy prescribes a specific course of conduct, then an employee must "adhere to the directive" and no discretion is involved. *Id*. If, however, the challenged action is discretionary, the next consideration is whether it is of the kind Congress intended to shield through the exception. *Id.* The Court

4

concluded that Congress intended to shield only those "governmental . . . decisions based on considerations of public policy" - decisions "'grounded in social, economic and political policy. . . .'" *Id.* at 537, 108 S.Ct. at 1959 (quoting *Varig*, 467 U.S. at 814, 104 S.Ct. at 2765). Accordingly, the discretionary function exception will not bar a negligence claim if the government's "policy leaves no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment." *Id.* at 546-47, 108 S.Ct. at 1964.

Whether the Challenged Action is a Matter of Choice for the Acting Employee.

In this instance, the challenged action is generally characterized as a failure to warn. More specifically, Plaintiff challenges the Government's removal of closure/warning signs after a grizzly bear was captured, anesthesized and studied, but before the bear fully recovered and left the study site. Plaintiff also challenges the failure of the IGBST to notify residents in the Kitty Creek area. The first question, then, is whether these challenged actions and inactions are a matter of choice, or whether a statute, regulation, or policy prescribes a specific course of conduct.

There is no statute or regulation prescribing signage placement or removal. Plaintiff argues, however, that an order, two permits and protocols required the IGBST to post

5

closure/warning signs while the adult bear was still present and recovering from anesthesia. Plaintiff also argues that protocols required warning the residents in the area. The Court disagrees.

The Shoshone National Forest Order prohibits persons from going into or upon any grizzly bear trapping and collaring areas, and states that such areas "will be marked on the ground with closure signs." Doc. No. 35-1, p.4. The Wyoming Game & Fish permit provides "[a]ll trap sites shall occur on public lands and will be signed to alert the public if they inadvertently approach a baited trap site." *Id.* at p.6. The Fish & Wildlife Service subpermit requires activities in conformance with certain criteria including to "[m]anage bears to limit conflicts with people to enhance the survival of grizzly bears" and to take "every possible precaution" "to avoid confrontation between bears and the public, including but not limited to closure or signing of the study sites." *Id.* at p.9.

There is no dispute that the Kitty Creek study site was initially signed as closed. The instant dispute surfaces because the signs were removed when the research team left but before the bear left the area. However, neither the order nor the permits specifically prescribe or direct that closure or warning signs must remain in place for any particular period of time after the study activities are completed, and thus they do not eliminate the

6

Case 2:11-cv-00339-NDF   Document 51   Filed 10/22/12   Page 7 of 13

government agents' choice regarding how to act in these particular circumstances.

Plaintiff also argues that the Jonkel Manual for Handling Bears for Managers & Researchers[1] has removed discretion and choice in warning by the members of the IGBST. Doc. No. 1, ¶¶ 27, 28, 68. More specifically, Plaintiff identifies the following language as setting forth the mandatory duty to warn by bear handlers: (1) "When a researcher or manager can prevent an injury by informing the public, they have the duty to do so"; and (2) "[b]ear researchers and managers must ... always warn the public when a trap has been placed in the vicinity or when there is a potential for a confrontation." Doc. 43, p.10.

However, the Jonkel manual suffers the same problem as previously discussed. The manual simply does not prescribe or direct that closure/warning signs remain in place after the study activities are done but before the bear has fully recovered and left the area. Further, the Jonkel manual makes clear that its main goal is "to assist and educate future bear handlers and to help reduce the number of bear and human injuries and deaths." Doc. No. 35-2, p. 14. It goes on to emphasize that "[hard] and fast rules are impossible, and every person will do things differently." *Id.* It is clear from the text that the Jonkel manual is not a directive or

---

[1]*See*, Doc. No. 35-2 through 35-7.

7

a prescriptive document but is only a reference aid.

Finally, Plaintiff contends that protocols exist requiring the IGBST to warn residents in the Kitty Creek area of grizzly bear capture and study activities and areas. More specifically, the Jonkel manual states that "[t]he first and most important thing to accomplish before setting out is to touch base with the landowners and local state and federal officials." Additionally, Plaintiff points to discussions among members of the IGBST where a supervisor asked another member to "talk to the recreation residence owners and inform them of their activities." Doc. No. 43-18, p.3. Without considering whether Mr. Evert is a "landowner,"[2] as noted above, the Jonkel manual is not a directive but is only a reference aid for bear handlers. Thus the manual does not eliminate discretion on the subject of warning landowners of anticipated, ongoing or completed bear capture and study activities. As to the discussions among the members of the IGBST, the supervisor's request cannot be fairly characterized as a regulation or policy prescribing a specific course of conduct to which the colleague must adhere without choice or discretion.

While Plaintiff may contend that the discretion afforded the Government actors was

---

[2]The Government argues that the Everts are not "landowners" as they occupy a cabin permitted on federal land.

8

abused considering the language in the order, permit, subpermit and manual, that does not remove or eliminate the judgment and choices which were available for purposes of the discretionary function exception.

Whether the Challenged Action is a Judgment or Choice Susceptible to Policy Analysis.

As indicated above, if the challenged conduct involves an element of judgment, it must be decided whether that judgment is of the kind that the discretionary function exception was designed to shield. *Berkovitz*, 486 U.S. at 536. This involves whether the judgment or choice is one susceptible to policy analysis. *United States v. Gaubert*, 499 U.S. 315, 325 (1991). Further, the policy analysis must be of the type that is grounded in the policy of the regulatory regime. *Id.* at 324-25. Finally, in applying the second prong of the *Berkovitz* test, it is critical to keep in mind its purpose, which is to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz*, 486 U.S. at 536-37, 108 S.Ct. at 1958-59.

As previously noted, this is a failure to warn case with the added twist that the Government posted a warning for several days in the form of a closed area sign, and then removed the sign upon leaving the area but before the bear had left. A review of

9

Government failure to warn cases in the Tenth Circuit shows that this Circuit has distinguished between situations in which the failure to warn was part of an overall policy decision, typically a readily identifiable public policy decision, and those where the court could not perceive in the record any significant social, economic or political policy in the action or inaction that allegedly contributed to the injury giving rise to the lawsuit. *See, e.g., Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1537-38 (10th Cir. 1992) (decision on how to contain environmental contaminants while protecting public health involved essence of policy choices protected by discretionary function exception); *Kiehn v. United States*, 984 F.2d 1100, 1103-1105 (10th Cir. 1993)(failure to post warning signs about dangers involved in scaling sandstone cliffs was part of overall policy to minimize intrusion upon area's natural setting); *Johnson v. United States, Dep't of Interior*, 949 F.2d 332, 338 (10th Cir. 1991)(failure to warn about dangers in climbing mountains was part of policy that limited governmental regulation of climbing); *Zumwalt v. United States*, 928 F.2d 951, 955 (10th Cir. 1991)(absence of warning signs was part of overall policy to maintain a trail in its wilderness state); *cf. Duke v. Department of Agriculture*, 131 F.3d 1407, 1412 (10th Cir. 1997)(failure to warn of the danger of falling rocks in camping area did not implicate political, social, or economic decision which discretionary function exception was meant to

10

protect); *Boyd v. United States ex rel. U.S. Army, Corps of Eng'rs*, 881 F.2d 895, 898 (10th Cir. 1989)(failure to warn swimmers of dangerous conditions was not part of policy decision to leave the area unzoned and for unrestricted uses); *Smith v. United States*, 546 F.2d 872, 876-77 (10th Cir. 1976) (failure to warn of the known dangers of the hazards of a super-heated thermal pool in a national park was not related to any policy decision but to a perceived lack of need for warning, and thus was not deemed the exercise of a discretionary function).

In reviewing these cases, it is worth further noting that typically the Tenth Circuit concludes that Government decisions or nondecisions are within the discretionary function exception when justified by the policy of preserving the area in its pristine condition to protect the wilderness experience of the visitors. In contrast, the Circuit concludes that decisions or nondecisions are not within the exception when "a specific hazard existed, distinct from the multitude of hazards that might exist in, for example, a wilderness trail through a national park or forest, where warnings might detract from the area's character or safety structures might be costly." *Duke,* 131 F.3d at 1411.

With this backdrop, the Government argues that the choice of whether and when to remove grizzly bear study site closure signs from an area inside the National Forest is

susceptible to policy analysis involving safety, public access, scenic preservation, and resource allocation. More specifically, the decision to again allow the public to access the area was susceptible to analysis of competing policy considerations - safety versus access. In addition, the decision was also susceptible to the analysis of protecting the natural condition of the land and the potential cost associated with returning to the site several days later.

Considering the record presented, the Court disagrees with the Government that there is any significant social, economic or political policy in the decision to remove the closure sign when the team left the area. The significant competing policy considerations of safety versus access - as well as the consideration of protecting the natural condition of the land - were present with the initial decision to close the area for capture and study. However, after that initial decision was made and a sign was posted, there were no significant safety, access or "natural condition of the land" policy considerations implicated in the Government's decision to close the area for six days, which occurred with the placement and early removal of the sign when the team left, versus the nine days actually noted for closure on the sign itself. The discretionary function exception protects only activities, which, because they further policy goals, are uniquely governmental. The action to remove the warning/closure

12

sign furthered no significant policy goals and was not uniquely governmental.

Finally, the economic consideration that someone would be required to return later to remove the sign is unsubstantiated but nonetheless insignificant in this context where a specific hazard existed in the form of a recovering grizzly bear at a Government-baited site within a larger area that included Government-permitted recreation residences.

## CONCLUSION

Therefore, Plaintiff's claim of failure to warn is not subject to the discretionary function exception to the waiver of immunity in the FTCA.

**IT IS ORDERED** that the Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction is hereby **DENIED**.

Dated this _22_ day of October, 2012.

NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE

13